UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 JUL 28 PM 4: 26

DEPUTY CLERK

| | | |
|---|---|---|
| JESSIE M. DENNIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:14-CV-00481-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jessie M. Dennis seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for disability insurance benefits under Title II of the Social Security Act.

After considering the pleadings, the briefs, and the administrative record, the Court recommends that the Commissioner's decision be affirmed and the complaint be dismissed with prejudice.

### Background

Dennis filed an application for disability insurance benefits under Title II of the Social Security Act on June 27, 2011. (Tr. 14). In her first application, Dennis claimed she became disabled on May 27, 2011. (Tr. 14). Dennis later amended her application to allege an onset of disability date of January 20, 2011. (Tr. 14). Dennis alleges she became disabled due to affective disorder, inflammatory bowel disease (IBS), hypertension, diabetes, major depressive disorder, vertigo, eczema, tinnitus, heart palpitations, and anxiety. (Tr. 80-81, 85, 91). Previously, Dennis worked as a call center customer service representative, supervisor, stockbroker, and mortgage

clerk. (Tr. 25, 32-78, 160). Dennis obtained a bachelors in business administration from Dallas Baptist University in 1991. (Tr. 35). Dennis also has an additional 38 hours towards a degree in computer programming. (Tr. 35).

Following a hearing on November 13, 2012, an Administrative Law Judge (ALJ) determined on January 16, 2013, that Dennis was not disabled. Specifically, the ALJ found that Dennis' impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she retained the residual functional capacity (RFC) to perform a full range of light work, "except that she can perform detailed, but not complex, instructions, including occupations with a reasoning development level of one through three," and that she could perform her past relevant work. The Appeals Council denied review on March 31, 2014. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. §

404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 17412 (5th Cir. 1990); *Wren*

*v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## Discussion

On appeal, Dennis raises the following issues: (1) whether the ALJ properly assessed her mental limitations, (2) whether the ALJ properly weighed the opinions of her treating physicians, and (3) whether the ALJ properly assessed her RFC.

After reviewing the record, the ALJ followed the five-step sequential evaluation process and determined that Dennis was not disabled within the meaning of the Social Security Act. At Step 1, the ALJ found that Dennis did not engage in any substantial gainful activity since January 20, 2011. (Tr. 15). At Step 2, the ALJ found that Dennis had the combination[1] following severe impairments: obesity, hypertension, non-insulin dependent diabetes, diverticulosis, IBS, hypothyroidism, macular degeneration, cataracts, benign positional vertigo, hypercholesterolemia, persistent disorder initiating/maintaining sleep, binge-eating disorder, incontinence of feces, social phobia, affective disorders, schizoid personality traits, and anxiety. (Tr. 15). At Step 3, the ALJ found that Dennis did not have an impairment or combination of impairments that met or equaled a listed impairment under the applicable regulations. (Tr. 12). Before proceeding to Steps 4 and 5,

---

[1] The ALJ stressed that "the *combination* of impairments is 'severe,' not that each impairment is 'severe.'" (Tr. 15).

the ALJ assessed Dennis' RFC and determined that she retained the ability to perform a full range of light work, "except that she can perform detailed, but not complex, instructions, including occupations with a reasoning development level of one through three." (Tr. 25). At Step 4, the ALJ found that Dennis could perform her past relevant work and thus, was not disabled within the meaning of the Social Security Act. Because of this finding at Step 4, a Step 5 evaluation was unnecessary.

### I.     The ALJ Properly Evaluated Dennis' Paragraph B Impairments

Dennis contends that the ALJ failed to properly evaluate her Paragraph B limitations and argues that even though her treating physicians, consultative examiner, and state agency medical consultant found that she suffered from moderate difficulties in maintaining social functioning, the ALJ incorrectly found her limitations to be mild. (Pl.'s Br. 6-9).

When a claimant suffers from mental impairments, the ALJ must follow procedures in 20 C.F.R. § 404.1520a to properly evaluate the impact of the impairments. Under this regulation, the ALJ must use a "psychiatric review technique" to evaluate how a claimant's mental impairments affect four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a. Based on these ratings, the impairments will either be deemed "severe" or "not severe." 20 C.F.R. § 404.1520a(d). If the mental impairments are found to be severe, the next step is to determine whether the impairment meets or equals a listed mental disorder. *Id.* If the impairment(s) does not meet or equal a listing, a mental RFC analysis is ordered. *Id.* The ALJ must document the technique findings in his decision. 20 C.F.R. § 404.1520a(e). The ALJ must make "specific findings as to the degree of limitation in each of the functional areas" and include the findings in the written decision. 20 C.F.R. § 404.1520a(e). The findings must include "the significant history, including

examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.*

The ALJ fully detailed the evidence in the record that support his findings on Dennis' Paragraph B impairments. The ALJ provided a thorough analysis of Dennis' past medical history, as well as her current symptoms, and detailed the findings of Dennis' treating physicians and state agency medical consultants. The ALJ considered Dennis' mental impairments under listings 12.04 (affective disorders), 12.06 (anxiety-related disorder), and 12.08 (personality disorders), and found that she did not have any marked limitations in any of the criteria. (Tr. 16). After considering the evidence as a whole, and after providing a detailed medical history—especially history surrounding her mental impairments, (Tr. 15-22),—the ALJ found that Dennis' mental impairments mildly restricted her activities of daily living and social functioning, moderately limited her concentration, persistence, or pace, but only insofar as they limited her ability to carry out detailed job tasks, and that she had never suffered an episode of decompensation. (Tr.23-24). A reading of the ALJ's decision indicates that he fully complied with the regulations in making his findings on Dennis' Paragraph B impairments.

## II.    The ALJ did not Err in Assigning "No Weight" to Drs. Darsa and Walter

Dennis next contends that the ALJ erred in rejecting the opinions of Drs. Darsa and Walter, her treating physicians. Dennis argues that the ALJ failed to cite any medical findings contrary to the treating physicians' opinions that would allow him to reject the same. Defendant argues that the ALJ properly rejected the physicians' opinions after evaluating the factors listed in 20 C.F.R. § 1527(c). Defendant states that the physicians' opinions were conclusory and not well-supported by the evidence on record.

Dr. Stephanie Darsa, Ph.D., treated Dennis for her psychological conditions between 2009 and 2011. (Tr. 312-24). However, Dennis did not appear for treatment between March 2010, and

March 2011. (Tr. 316). In March 2011, Dennis reported that she was depressed and isolating after the death of her brother. (Tr. 316). In April 2011, she reported that her mood was good and was doing better with her eating, but later the same month, she reported having a panic attack and losing control of her eating. (Tr. 317). The June 2011, progress notes indicate that Dennis again had trouble with her eating, that she quit her job because it was too stressful, and was having panic attacks, anxiety, depression, and sleep disturbances. (Tr. 319). In July 2011, Dennis reported being stressed about her finances, having trouble sleeping, and weight gain due to her eating disorder. (Tr. 319-20). In August 2011, Dennis felt depressed due to her IBS and missed her appointment for the Lap Band procedure. (Tr. 320).

In a September 2011 mental status report, Dr. Darsa, stated that Dennis suffered from severe depression and anxiety, which had gotten worst over the past 7-10 years. Dr. Darsa also noted that Dennis' anxiety interfered with her attention and ability to retrieve information. Dennis was diagnosed with general anxiety disorder, major depression, and panic disorder without agoraphobia. Her prognosis was guarded because the interplay between her mental status and physical illnesses made recovery difficult.

Dr. Margaret Walter, D.O., treated Dennis for most of her medical issues between March and November 2011, and briefly in June 2012. During this time, Dr. Walter found that Dennis suffered from severe IBS on at least one occasion. (Tr. 362). Dr. Walter diagnosed Dennis with IBS several times, and ordered a consult from a gastrointestinal specialist. (Tr. 334-35, 342, 352, 357, 360, 361, 362). The medical records show that Dennis suffered from bouts of constipation and diarrhea as a result of her IBS. However, Dr. Walter's records also indicate that in May 2011, Dennis had normal bowel sounds and a non-tender abdomen. (Tr. 353). Dennis agreed with the gastrointestinal specialist's finding that her IBS was stress-induced. (Tr. 352). In July 2011, Dennis appeared for diabetes management, where she reported that she quit her job due to IBS and

related stool incontinence. (Tr. 344). However, the physical exam revealed normal bowel sounds and a soft, non-tender abdomen with no masses. (Tr. 348). In April 2011, Dennis appeared for a colonoscopy, which revealed diverticulosis of the descending and transverse colon. (Tr. 261). Dr. Allen Rubin, M.D., who performed the colonoscopy, reported that Dennis had a history of IBS with alternating constipation and diarrhea, and recommended that she undergo routine colonoscopies to monitor the disease. (Tr. 266). After the colonoscopy, Dr. Rubin diagnosed Dennis with IBS and other related issues. (Tr. 266). In June 2012, Dr. Walter treated Dennis for hypertension and diabetes. During the physical exam, Dennis denied having any diarrhea, and Dr. Walter noted that she had normal bowel sounds and a non-tender abdomen. (Tr. 392-94). However, at the same visit, Dr. Walter noted that Dennis' IBS had deteriorated. (Tr. 395).

In June 2012, Dr. Walter wrote a short letter to "whom it may concern," and stated that Dennis suffered from a host of chronic conditions, including IBS, binge eating disorder, sleep disorders, panic disorder, depression, and anxiety, and stated that IBS was the illness that affected Dennis the most. Dr. Walter opined that Dennis could not participate in any substantial gainful employment.

A treating physician is a physician who has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. Generally, a treating physician is considered to be familiar with a claimant's impairments, treatments, and responses. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, a treating physician's opinion regarding the nature and severity of a claimant's impairments should be accorded great weight when determining disability if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172,

176 (5th Cir. 1995); 20 C.F.R. § 404.1527(c)(2); *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237; *see* S.S.R. 96-2p, 1996 WL 374188, (Jul. 2, 1996) ("If a treating source's opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."). Still, the ultimate disability decision lies with the ALJ, who is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990); *Newton*, 209 F.3d at 455. However, when a treating physician's opinion is rejected or given diminished weight, the ALJ must show good cause. *Newton*, 209 F.3d at 445; *Jones v. Astrue*, No. 3:10-CV-2342-D, 2011 WL 2633793 *11 (N.D. Tex. Jul. 5, 2011) (noting remand is appropriate when the ALJ rejected trading physician opinions without explicitly considering the factors in 20 C.F.R. § 404.1527, and when the treating physicians opinion is not controverted by other reliable medical evidence.). "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Leggett*, 67 F.3d at 566 (quoting *Greenspan*, 38 F.3d at 237).

Although opinions of treating sources can be afforded controlling weight in the right circumstances, their opinions regarding disability (within the meaning of the Social Security Act), and other opinions on issues reserved for the commissioner, will not receive any special significance. 20 C.F.R. § 1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled . . . "[W]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . .").

In the instant case, the ALJ afforded no weight to the opinions of Drs. Darsa and Walter. The ALJ stated that he had good reason to reject those opinions because although both doctors had treating relationships with Dennis, Dr. Walter is not a specialist, Dr. Darsa did not perform mental status examinations on Dennis, and Dr. Walter's examinations did not reveal abnormalities that were significant enough to warrant a finding of disability.

A review of the record indicates that the ALJ had good cause for rejecting the opinions of Drs. Darsa and Walter. The ALJ conceded that Drs. Darsa and Walter had a treating relationship, noting, however, that there was a gap in psychological treatment between November 2011, and June 2012. (Tr. 24). 20 C.F.R. § 1527(c)(3) dictates how ALJ determines the supportability of a treating physician's opinion. The Code reads, in relevant part, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 1527(c)(3). Records from Dr. Darsa do not indicate that she conducted a mental status exam during her treating relationship with Dennis. (*See* Tr. 312-24). The records provided show only reports of the symptoms Dennis conveyed to Dr. Darsa. (*See* Tr. 312-24). None of Dr. Darsa's notes show her clinical impressions of Dennis' symptoms. The only full mental status evaluation conducted by Dr. Darsa is the medical source opinion, which Dennis seeks to rely upon. (Tr. 386-90). Similarly, while Dr. Walter treated Dennis for several illnesses, there is little laboratory evidence on record (except one colonoscopy performed in April 2011) to substantiate her opinion. Additionally, Dr. Walter's opinion is "brief and conclusory, [and] not supported by medically acceptable clinical laboratory diagnostic techniques:"[2] the statement is essentially one paragraph, followed by a list of "active problems" from which Dennis suffers. Although there is diagnostic evidence that Dennis suffers from IBS,

---

[2] *Greenspan*, 38 F.3d at 237.

the severity of Dennis' IBS has not been corroborated through the objective medical evidence. Last, Dr. Walter's conclusion that Dennis could not participate in any substantial gainful activity is not binding, as that determination is reserved solely for the Commissioner. *See* 20 C.F.R. § 1527(d).

The ALJ provided good cause for rejecting the opinions of Dr. Darsa and Walter, thus, did not err in assigning no weight to the treating physicians' opinions.

### III.    Substantial Evidence Supports the ALJ's RFC Finding

Dennis' last contention is that the ALJ failed to consider all of her functional limitations in the RFC assessment. (Pl.'s Br. 13-14). Dennis argues that the ALJ failed to properly consider the effects of her edema, explosive diarrhea, diabetes, IBS, macular degeneration, cataracts, and fecal incontinence. Dennis maintains that the ALJ should have discussed the effect of all these impairments in his RFC finding.

The determination of a claimant's RFC is reserved for the ALJ alone. 20 C.F.R. § 404.1547(d)(2); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). In determining RFC, the ALJ considers the individual's ability to meet the physical and mental demands, as well as the sensory and other requirements of the job. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8P, 1996 WL 374184 (July 2, 1996) (emphasis in original); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ considers exertional and non-exertional limitations. *See Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); 20 C.F.R. § 404.1569(a). Mental limitations, such as a limited ability to interact with supervisors and coworkers, may affect a person's ability to carry out certain activities. 20 C.F.R. §§ 404.1545(c), 416.945(c). Still, an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). Accordingly, the ALJ

considers medical opinions, together with the other evidence, to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(b).

It is well-established that an ALJ can consider all the evidence in the record without directly addressing each piece of evidence in his opinion. *Ramirez v. Colvin*, No. 2:12-CV-262, 2014 WL 1293888, at *10 (N.D. Tex. Mar. 28, 2014) (citing *McFadden v. Astrue*, 465 Fed. App'x. 557, 559 (7th Cir. 2010) ("an ALJ. . . need not discuss every piece of evidence in the record")); *Black v. Colvin*, No. 2L12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014); *Jefferson v. Barnhart*, 356 F. Supp.2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence"); *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). Thus, as long as the ALJ's opinion shows a clear basis of his assessment, further discussion is not required. *Black*, 2014 WL 1116682, at *2 (citing *Penalver v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. Jul. 13,2005) ("[t]he ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected.")).

The ALJ concluded that Dennis had the RFC to perform a full range of light work except that she could perform detailed, but not complex, instructions, including occupations with reasoning development level of one through three. (Tr. 25). Dennis underwent both mental and physical RFC evaluations. Dr. Robert Gilliland, M.D., performed Dennis' physical and mental RFC evaluations. (Tr. 300-07). In the physical RFC, Dr. Gilliland opined that Dennis could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours in an 8 hour work day, sit about 6 hours in an 8 hour work day, and push or pull an unlimited amount. (Tr. 301). Dennis had no postural limitations, manipulative limitations, communicative,

environmental, or visual limitations. (Tr. 302-04). Dr. Gilliland opined that Dennis' "[a]lleged limitations are disproportionate to objective" medical evidence on record. (Tr. 305). In the mental RFC, Dr. Gilliland found that she was not more than moderately limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 308-10). Dr. Gilliland noted that Dennis could "understand, remember and carry out detailed but not complex instructions, made decisions, attend and concentrate for extended periods, accept instructions, make decisions and respond appropriately to changes in routine work setting," and that although Dennis was "somewhat limited by the [symptoms] of her disorders, the overall impact . . . does not wholly compromise her ability to function independently, effectively, and on a sustained basis." (Tr. 310).

Based on the detailed analysis of all of Dennis' impairments preceding the RFC finding, and throughout the decision, it is clear that the ALJ considered all of the evidence in the record. Moreover, as stated above, the ALJ need not discuss every minute detail considered in his findings. Although Dennis' testimony at the hearing is compelling, it is axiomatic that a claimant's subjective complaints must also be corroborated by the objective medical evidence. Additionally, the ALJ accommodated Dennis' non-exertional limitations in his RFC assessment by limiting her functionality in accordance with Dr. Gilliland's mental RFC findings. (*See* Tr. 310).

### Conclusion

In accordance with the foregoing, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and the complaint be **DISMISSED** with prejudice.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated this 28th day of July, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**